This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-35917**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**JESSIE CHAVEZ,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
**James M. Hudson, District Judge**

Hector H. Balderas, Attorney General
Maha Khoury, Assistant Attorney General
Santa Fe, NM

for Appellee

Law Offices of Adrianne R. Turner
Adrianne R. Turner
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**HANISEE, Chief Judge.**

**{1}** Defendant Jessie Chavez appeals from his convictions for kidnapping in violation of NMSA 1978, Section 30-4-1 (2003); false imprisonment in violation of NMSA 1978, Section 30-4-3 (1963); child abuse in violation of NMSA 1978, Section 30-6-1(D)(1) (2009); residential burglary in violation of NMSA 1978, Section 30-16-3(A) (1971); aggravated assault with a deadly weapon against a household member in violation of NMSA 1978, Section 30-3-13(A)(1) (1995); and unlawful taking of a motor vehicle in violation of NMSA 1978, Section 30-16D-1(A)(1) (2009). Defendant makes the following

challenges on appeal: (1) the district court erred in instructing the jury as to the counts of child abuse, burglary, and aggravated assault; (2) the State presented insufficient evidence to support Defendant's convictions for child abuse, kidnapping, false imprisonment, and burglary; and (3) defense counsel's failure to file a motion to suppress and to investigate the case constituted ineffective assistance of counsel. We affirm in part, reverse in part, and remand for further proceedings.

**BACKGROUND**

**{2}**     Given that the parties are familiar with the facts and details of this case, we only briefly set forth pertinent facts and applicable law in this memorandum opinion, reserving further discussion of specific facts where necessary to our analysis. *See* Rule 12-405(B) NMRA (providing that appellate courts may dispose of a case by non-precedential order, decision, or memorandum opinion under certain circumstances); *State v. Gonzales*, 1990-NMCA-040, ¶ 48, 110 N.M. 218, 794 P.2d 361 ("[M]emorandum opinions are not meant to be cited as controlling authority because such opinions are written solely for the benefit of the parties [and s]ince the parties know the details of the case, such an opinion does not describe at length the context of the issue decided[.]").

**{3}**     On August 22, 2012, Defendant learned that his former girlfriend, Lindsey, obtained a restraining order against him. Lindsey told Defendant about the restraining order while speaking to him on the phone, and almost immediately upon having been informed, Defendant appeared banging on the front door of Lindsey's apartment, where she lived with her nine-year-old son, J.M.[1] Once there, Defendant unsuccessfully tried to gain entry through the front door, eventually breaking a window to climb into J.M.'s bedroom. Inside, Defendant found Lindsey in the bathroom, beat her, threateningly wielded a pocket knife, took her car keys, and ordered Lindsey and J.M. to leave the apartment with him through the broken window. After leaving the apartment, Defendant drove the three of them in Lindsey's vehicle to multiple locations in and between Roswell and Hobbs. In Hobbs, Defendant left J.M., alone, in a restaurant parking lot. Defendant then drove Lindsey to other locations in Hobbs before finally stopping at a park where he fell asleep in the vehicle, at which point Lindsey fled and notified police. Defendant was charged with two counts of kidnapping, one count of intentional child abuse by endangerment, one count of residential burglary, one count of aggravated assault on a household member, and one count of unlawful taking of a motor vehicle. After a trial, the jury convicted Defendant of all counts except for one count of kidnapping, in place of which the jury convicted Defendant of the lesser included count of false imprisonment. Defendant appeals.

**DISCUSSION**

**I.     The District Court Properly Instructed the Jury Regarding Burglary and Aggravated Assault, but Erred in its Instruction Regarding Child Abuse**

---

1Defendant and Lindsey have a daughter together, who also lived with Lindsey and J.M., but who was not present at the apartment at the time of Defendant's arrival. Defendant did not live at the apartment.

**{4}** Defendant argues that the district court erred by (1) failing to provide the jury with definitional instructions regarding burglary, (2) failing to provide the jury with definitional instructions regarding aggravated assault, and (3) improperly instructing the jury on child abuse by using a withdrawn version of the applicable instruction. We address each argument in turn.

## A. Standard of Review

**{5}** Because Defendant failed to object to any of the jury instructions, we review his challenges for fundamental error only. *See State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 ("The standard of review we apply to jury instructions depends on whether the issue has been preserved. If the error has been preserved we review the instructions for reversible error. If not, we review for fundamental error." (citation omitted)). In instances of alleged instructional error, "we seek to determine whether a reasonable juror would have been confused or misdirected by the jury instruction." *Id.* ¶ 12 (internal quotation marks and citation omitted). "Juror confusion or misdirection may stem from instructions which, through omission or misstatement, fail to provide the juror with an accurate rendition of the relevant law." *State v. Anderson*, 2016-NMCA-007, ¶ 9, 364 P.3d 306 (internal quotation marks and citation omitted). If we determine instructional error occurred, we "review the entire record, placing the jury instructions in the context of the individual facts and circumstances of the case, to determine whether the [the d]efendant's conviction was the result of a plain miscarriage of justice." *State v. Barber*, 2004-NMSC-019, ¶ 19, 135 N.M. 621, 92 P.3d 633 (internal quotation marks and citation omitted). "The rule of fundamental error applies only if there has been a miscarriage of justice, if the questions of guilt is so doubtful that it would shock the conscience to permit the conviction to stand, or if substantial justice has not been done." *State v. Orosco*, 1992-NMSC-006, ¶ 12, 113 N.M. 780, 833 P.2d 1146.

## B. Jury Instruction on Burglary

**{6}** Defendant argues that the jury's instruction regarding burglary was insufficient in three ways: (1) it failed to define "dwelling house"; (2) it failed to define the underlying felony of aggravated assault with a deadly weapon on a household member; and (3) it failed to instruct that false imprisonment could constitute the underlying felony instead of kidnapping. We disagree.

**{7}** First, Defendant's contention that the district court erred by not including a definition of "dwelling house" is unpersuasive. Generally, the "failure to give a definitional instruction is not a failure to instruct on an essential element." *State v. Mascareñas*, 2000-NMSC-017, ¶ 19, 129 N.M. 230, 4 P.3d 1221 (internal quotation marks and citation omitted). However, where a "critical determination" is involved, the failure to include a definitional instruction is "akin to a missing elements instruction" constituting fundamental error. *Id.* ¶ 20. In addition, "failure to give a definitional instruction when the term being defined has a legal meaning different from the commonly understood lay interpretation of the term may result in jury confusion that could place the verdict in doubt." *State v. Luna*, 2018-NMCA-025, ¶ 22, ___P.3d___

(alteration, internal quotation marks, and citation omitted), *cert. denied*, 2018-NMCERT-___ (No. S-1-SC-36896, Mar. 16, 2018). Because the definition of "dwelling house" was not a critical determination in this case and does not have legal meaning different from the lay understanding of the term, we conclude the district court's failure to provide a definitional instruction was not fundamental error.

**{8}**     Second, Defendant's contention that the burglary instruction may have confused the jury by erroneously describing the required underlying felony as "aggravated assault" instead of "aggravated assault with a deadly weapon on a household member" is unavailing. Given that the jury was separately instructed on the crime of aggravated assault, we do not agree that omission of the terminologies "deadly weapon" and "household member" bore the capacity to confuse or mislead the jury such as to lead to a conviction that would shock the conscience if affirmed.

**{9}**     Third, Defendant contends that because the jury instruction for kidnapping contained an instruction for a lesser included offense of false imprisonment, the jury should have been similarly instructed on false imprisonment as the potential underlying felony to burglary. Specifically, Defendant argues "[b]y failing to include false imprisonment in the burglary instruction, the [district] court misled the jury into thinking it was required to convict for the greater offense of kidnapping in order to also convict for burglary." We disagree. Because the jury received separate instructions for kidnapping and the lesser included offense of false imprisonment, omitting false imprisonment as a potential underlying felony in the burglary instruction did not bear the capacity to confuse or mislead the jury such that the ensuing conviction shocks the conscience. We hold that the jury was properly instructed as to the charge of burglary. *See Benally*, 2001-NMSC-033, ¶ 12; *Orosco*, 1992-NMSC-006, ¶ 12.

## C.     Jury Instruction on Aggravated Assault

**{10}**     Defendant argues that the jury was insufficiently instructed on Defendant's single count of aggravated assault. Specifically, Defendant contends that proper instruction on that count required a definition of both "great bodily harm" and "deadly weapon." We disagree. As stated, absent the involvement of a "critical determination" or a legal meaning different from the commonly understood lay interpretation, the failure to give a definitional jury instruction is not a failure to instruct on an essential element. *See Mascareñas*, 2000-NMSC-017, ¶¶ 19-20; *Luna*, 2018-NMCA-025, ¶ 22. Significantly, the jury was instructed that in order to find Defendant guilty of aggravated assault, it was required to find beyond a reasonable doubt that "[D]efendant assaulted or threatened Lindsey[] with a knife" and that "[Defendant] used a knife [which is] a deadly weapon only if you find that a knife, when used as a weapon, could cause death or great bodily harm[.]" Because under a fundamental error analysis we seek to determine whether a reasonable juror "would have been confused or misdirected by the jury instruction[,]" we conclude that no reasonable juror could be confused given the explanatory language of the aggravated assault instruction, the jury's consideration of testimony regarding Defendant's use of the pocket knife contemporaneous to attacking Lindsey in the bathroom, and the jury's ability to infer that the knife, when used as a

weapon, could have caused death or great bodily harm. *Benally*, 2001-NMSC-033, ¶ 12; *State v. Gwynne*, 2018-NMCA-033, ¶ 49, 417 P.3d 1157. Accordingly, we hold there was no fundamental error in the district court's instruction on aggravated assault.

**D.     Jury Instruction on Child Abuse**

**{11}**     Defendant argues that the district court's instruction to the jury on the count of child abuse by endangerment constituted fundamental error because the given instruction was not the current version of the Uniform Jury Instruction (UJI) at the time of trial. The current instruction, UJI 14-612 NMRA, was adopted effective April 3, 2015, approximately four months before Defendant's trial. Defendant contends that because the district court did not give an instruction based on UJI 14-612, the jury was erroneously asked to decide only whether Defendant's purpose was to leave J.M. in the parking lot, rather than requiring the jury to decide whether Defendant acted with reckless disregard for the health or safety of J.M. when he left J.M. in the parking lot. We agree.

**{12}**     The first step in our fundamental error inquiry is to ask "whether a reasonable juror would have been confused or misdirected by the jury instruction[s,]" *Benally*, 2001-NMSC-033, ¶ 12, focusing on whether those instructions, "through omission or misstatement, fail to provide the juror with an accurate rendition of the relevant law[,]" *Anderson*, 2016-NMCA-007, ¶ 9 (internal quotation marks and citation omitted). We compare the uniform instruction in effect at the time of Defendant's trial, UJI 14-612, with the instruction the district court gave. UJI 14-612 requires the State to prove, among other things, that the accused showed a "reckless disregard" for the child's "safety or health," and the instruction explains that in order for the jury to find "reckless disregard," it must find that the accused's "conduct was more than merely negligent or careless." Instead of receiving this instruction, the jury in Defendant's case received an instruction based on a withdrawn and outdated instruction, UJI 14-604 NMRA (2000) (withdrawn April 3, 2015). The relevant portions of the given instruction required the jury to determine (1) whether "[Defendant] caused [J.M.] to be placed in a situation which endangered the life or health of [J.M.] when he was left in Hobbs" and (2) whether "[Defendant] acted intentionally." Importantly, the district court instructed the jury that "[a] person acts intentionally when he purposely does an act which the law declares to be a crime." The given instructions required the State to prove significantly less than it would have been required to prove under UJI 14-612. Had the district court given an instruction based on UJI 14-612, the jury could have returned a guilty verdict only if it found that Defendant acted with reckless disregard for the safety or health of J.M. by leaving him in the parking lot. The given instructions allowed a guilty verdict based on a finding that Defendant intended to leave J.M. in the parking lot without any further finding regarding Defendant's mens rea. We conclude that the instruction's misstatement of the law regarding the requisite mens rea would have confused or misled a reasonable juror.

**{13}**     We must now determine whether this error was fundamental. While the district court's use of an outdated jury instruction may not, on its own, rise to the level of

fundamental error, the "failure to instruct the jury on an essential element . . . ordinarily is fundamental error." *Barber*, 2004-NMSC-019, ¶ 20. The given instruction omitted an essential element of the offense, and we have no basis to conclude that a finding of reckless disregard for J.M.'s safety is implicit in the jury's verdict. *See id.* ¶ 29 ("Error is not fundamental when the jury could not have reached its verdict without also finding the element omitted from the instructions."). The State argues that the given jury instructions "worked to Defendant's advantage" because they required the State to prove that Defendant acted "intentionally," which the State asserts is a "higher standard" than reckless disregard. We disagree based on the incorrect definition of "intentionally" included in the jury's instructions. The instruction defining "intentionally" in Defendant's case was based on UJI 14-141, which only required the State to prove that Defendant intended to leave J.M. in the parking lot. The instruction did not require the State to prove anything more about Defendant's intent. Under the given instructions, by finding that Defendant acted "intentionally" when he left J.M. in the parking lot, the jury did not necessarily find that he did so with reckless disregard for J.M.'s health or safety. Accordingly, the jury could have reached its guilty verdict without finding that Defendant had requisite mens rea.

**{14}** Because omission of the intent element "implicate[s] a fundamental unfairness within the system that would undermine judicial integrity if left unchecked[,]"we conclude that fundamental error occurred. *Id.* ¶ 18 (internal quotation marks and citation omitted). We therefore reverse Defendant's conviction for intentional child abuse by endangerment.

## II. The State Presented Sufficient Evidence to Support Defendant's Convictions for Child Abuse, Kidnapping, False Imprisonment, and Burglary

**{15}** Defendant contends that his convictions for kidnapping, false imprisonment, burglary, and child abuse are not supported by sufficient evidence. We address each argument in turn.

### A. Standard of Review

**{16}** We review a challenge to the sufficiency of the evidence to determine "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, 345 P.3d 1056, ¶ 52 (internal quotation marks and citation omitted). The reviewing court "view[s] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. "Our appellate courts will not invade the jury's province as fact-finder by second-guessing the jury's decision concerning the credibility of witnesses, reweighing the evidence, or substituting its judgment for that of the jury." *Gwynne*, 2018-NMCA-033, ¶ 49 (internal quotation marks and citation omitted), *cert. denied*, ___-NMCERT-___ (No. S-1-SC-36926, Apr. 10, 2018). "Jury instructions

become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883.

## B.    Burglary

**{17}**    Defendant argues the evidence presented at trial was insufficient to support the jury's finding of the intent required to support a conviction of burglary. Specifically, Defendant contends that the State failed to establish that Defendant entered Lindsey's home with the requisite intent to commit either aggravated assault or kidnapping once inside. We disagree. Defendant was charged with one count of residential burglary contrary to Section 30-16-3(A). At trial, the jury was instructed that in order to find Defendant guilty, the State must prove "[D]efendant entered a dwelling without authorization" and "[D]efendant entered the dwelling with the intent to commit an aggravated assault or kidnapping when inside[.]" Because specific intent cannot often be proven by direct, voluntary testimony "proof of a specific intent must ordinarily be proved circumstantially by inferences from the facts and circumstances of each case." *Holguin v. Sally Beauty Supply Inc.*, 2011-NMCA-100, ¶ 22, 150 N.M. 636, 264 P.3d 732.

**{18}**    Here, the jury heard testimony regarding a number of details that could warrant a reasonable juror to conclude that the State satisfied their burden of proving specific intent: Defendant arrived at Lindsey and J.M.'s home immediately after learning that Lindsey had procured a restraining order against him; upon arrival, Defendant unsuccessfully attempted to kick in the front door, and ultimately broke and entered through J.M.'s bedroom window; and, once inside, Defendant found Lindsey in the bathroom, beat her, and brandished the knife he was carrying. Given that a reasonable juror could infer from such evidence a violent or intimidating intent by Defendant, and that we will not intrude upon the jury's role as fact-finder nor second-guess a jury's determination regarding the weight of evidence and the credibility of witnesses, we hold that there was sufficient evidence of the requisite intent to uphold Defendant's conviction of burglary. *Gwynne*, 2018-NMCA-033, ¶ 49.

## C.    Kidnapping and False Imprisonment

**{19}**    Defendant argues the evidence presented at trial was insufficient to support the jury's finding of specific intent required for kidnapping or the lesser included charge of false imprisonment. Defendant was charged with two counts of first degree kidnapping, one count as to Lindsey and one count as to J.M., pursuant to Section 30-4-1(A). At trial, the jury was instructed that in order to find the Defendant guilty of kidnapping, the State had to prove that Defendant (1) "took, confined, or transported" Lindsey and J.M. "by force, intimidation, or deception"; and (2) "intended to hold" Lindsey and J.M. against their will to either "inflict physical injury on [them or] for the purpose of making [them] do something or for the purpose of keeping [them] from doing something." The jury was additionally instructed that if it had "reasonable doubt as to whether the defendant committed the crime of kidnapping, [it] must proceed to determine whether [D]efendant committed the [lesser] included offense of false imprisonment." To find

Defendant guilty of false imprisonment rather than kidnapping, the jury had to consider whether Defendant "confined [J.M. or Lindsey] against [their will]" and whether "Defendant knew that he had no authority to confine [either J.M. or Lindsey]." Ultimately, based on the evidence presented, the jury found Defendant guilty of one count of kidnapping Lindsey, and one count of falsely imprisoning J.M.

**{20}** To reiterate, the evidence presented to the jury at trial established that Defendant's arrival at the apartment in which Lindsey and J.M. lived was prompted by Defendant learning that Lindsey obtained a restraining order against him. Nonetheless, he broke into the apartment through J.M.'s window, attacked Lindsey in the bathroom, took the keys to her car, and "told [Lindsey and J.M.] to go out of the bedroom window." Lindsey testified that she complied with Defendant's command to leave the house through the broken window because J.M. was already outside with Defendant. Lindsey also testified that when she got outside, J.M. was already in the backseat of her car, and Defendant was in the driver's seat. Reactively, she got into the passenger seat of the car. Lindsey had not given Defendant permission to drive her car at that time, although he had previously driven the vehicle. Defendant then drove Lindsey and J.M. to a friend's house where Defendant asked the friend to follow them to a gas station and pay for and pump gas into the vehicle. Lindsey testified that Defendant would not pump the gas himself because "he didn't want to be seen" and that she was too afraid to speak to Defendant's friend while he was with them. While at the gas station and during the drive from Roswell to Hobbs, Defendant had the pocket knife open on his lap. Out of a concern for J.M.'s safety, Lindsey suggested that Defendant drop J.M. off at her uncle's house, but Defendant refused. Instead, Defendant stopped in a restaurant parking lot and dropped J.M. off, alone. Lindsey testified that although she wanted to, she did not stay with J.M. because "[Defendant] didn't want to stay. He just left him." After leaving J.M., Defendant drove to multiple destinations in Hobbs, including a private residence where Lindsey attempted to alert someone as to what was happening, but never actually spoke to anyone because Defendant "told [her] not to" and she was afraid of Defendant. Eventually Defendant drove them to a park where he fell asleep in the car and Lindsey worked up the courage to escape.

**{21}** First, based on the substantial evidence presented, we conclude that the State presented evidence from which a reasonable jury could have found beyond a reasonable doubt that Defendant had the necessary intent to sustain his conviction for kidnapping Lindsey. "Intent is subjective and is almost always inferred from other facts in the case, as it is rarely established by direct evidence." *State v. Duran*, 2006-NMSC-035, ¶ 7, 140 N.M. 94, 140 P.3d 515 (internal quotation marks and citation omitted). Considering the testimony from Lindsey regarding the restraining order against Defendant, her fear of Defendant before and while they were in the vehicle, and Defendant's wielding of a pocket knife before and during the car ride, a jury could have reasonably found that Defendant's intent was to hold Lindsey against her will in order to keep her from being able to enforce the restraining order.

**{22}** Second, regarding Defendant's conviction for the false imprisonment of J.M., we conclude that the State presented sufficient evidence from which a reasonable jury

could have found that Defendant confined J.M. against his will and that Defendant knew he had no authority to do so based on testimony from both J.M. and Lindsey. Specifically, J.M. testified that (1) after Defendant and Lindsey got in a fight, Defendant "stole" Lindsey and J.M.; (2) J.M. went out the window and got into Lindsey's car with Defendant even though he did not want to; (3) J.M. obeyed because Defendant forced him; and (4) J.M. was scared when Defendant left him alone in the restaurant parking lot because J.M. "didn't know what was going to happen to [his] mom." Considering this evidence, a jury could have reasonably found Defendant guilty of false imprisonment of J.M. based on Defendant's confinement of J.M. in the vehicle.

**{23}** Accordingly, disregarding evidence and inferences that support a different result from that of the jury's verdict at trial, we hold that sufficient evidence supports Defendant's convictions for both kidnapping and false imprisonment. *See Gwynne*, 2018-NMCA-033, ¶ 49.

### D.    Child Abuse

**{24}** Defendant broadly contends that his conviction of child abuse is unsupported by the evidence presented at trial and that "[t]he facts of this case simply do not support a child abuse conviction under the standard set forth in UJI 14-612." Our analysis is limited to a review of the sufficiency of the evidence against the instruction given at trial, despite finding fundamental error regarding the jury's instruction on child abuse. *See State v. Dowling*, 2011-NMSC-016, ¶ 18, 150 N.M. 110, 257 P.3d 930 ("We review [the d]efendant's claim under the erroneous instruction provided to the jury at trial.").

**{25}** Defendant was charged with intentional child abuse by endangerment (no death or great bodily harm), contrary to Section 30-6-1(D)(1). Per the instructions given at the trial, in order to convict Defendant, the jury had to find that Defendant caused J.M. to be placed in a situation that endangered the life or health of J.M. and that Defendant acted intentionally. The record establishes that Defendant drove Lindsey and J.M. to Hobbs, left J.M. in the parking lot, and drove away *before* Lindsey called her uncle to request that he pick up J.M. Defendant did not know J.M. would, in fact, ever be picked up when Defendant left J.M. in the parking lot. Additionally, J.M. testified that he felt scared after Defendant left him the parking lot, and Lindsey testified that J.M. was upset and crying. A reasonable juror could infer from such evidence that Defendant placed J.M. in a situation that endangered J.M.'s life or health and that he did so intentionally. Because we must determine whether the jury's decision is supported by substantial evidence, and not whether the jury could have reached a different conclusion, we conclude that in viewing the evidence in the light most favorable to the verdict, the evidence presented was sufficient such that a rational jury could have found satisfied the essential elements required for conviction. *See State v. Anderson*, 1988-NMCA-033, ¶ 8, 107 N.M. 165, 754 P.2d 542 ("The question is whether the trial court's result is supported by substantial evidence, not whether the trial court could have reached a different conclusion.").

**{26}** Because we conclude there was sufficient evidence presented to support the conviction as instructed at trial, even erroneously, retrial on Defendant's single count of intentional child abuse by endangerment is not barred. *See State v. Dowling*, 2011-NMSC-016, ¶ 18, 150 N.M. 110, 257 P.3d 930 ("If we find that sufficient evidence was presented at trial to support a conviction, then retrial is not barred.").

### III.  Defendant Has Not Presented a Prima Facie Case of Ineffective Assistance of Counsel

**{27}** Defendant contends that his counsel was ineffective based on counsel's failure to file a motion to suppress evidence found during a warrantless vehicle search and on an allegation that counsel failed to investigate the case. We disagree.

**{28}** "A prima facie case of ineffective assistance of counsel requires that a defendant establish that: (1) counsel's performance fell below that of a reasonably competent attorney; (2) no plausible, rational strategy or tactic explains counsel's conduct; and (3) counsel's apparent failings were prejudicial to the defense." *State v. Cordova*, 2014-NMCA-081, ¶ 9, 331 P.3d 980 (internal quotation marks and citation omitted). "If facts necessary to a full determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition." *State v. Crocco*, 2014-NMSC-016, ¶ 14, 327 P.3d 1068.

**{29}** Here, Defendant's claims, to the extent reviewable based on the record on direct appeal, do not establish a prima facie case of ineffective assistance of counsel. Regarding the argument that defense counsel was ineffective by failing to file a motion to suppress evidence found during a search of Lindsey's vehicle, we agree with the State that Defendant lacks standing to challenge the warrantless vehicle search because undisputed evidence established that the vehicle belonged to Lindsey and the Defendant took the vehicle without her authorization. *See State v. Van Dang*, 2005-NMSC-033, ¶ 7, 11, 138 N.M. 408, 120 P.3d 830 (holding that an unauthorized driver of a rented vehicle does not have standing to challenge the constitutionality of a search of the vehicle); *State v. Esguerra*, 1991-NMCA-147, ¶ 9, 113 N.M. 310, 825 P.2d 243 ("It is generally recognized . . . that one who owns, controls, or lawfully possesses property thereby has a legitimate expectation of privacy in that property protected by the fourth amendment."). Based on Defendant's inability to demonstrate the sufficient expectation of privacy, we hold that counsel's performance in not moving to suppress did not fall below that of a reasonably competent attorney. *See Cordova*, 2014-NMCA-081, ¶ 9.

**{30}** Defendant's second claim of ineffective assistance of counsel, based on the allegation that his lawyer failed to investigate, concerns matters not fully reviewable in the appellate record. Defendant contends that counsel's failure to conduct pretrial witness interviews and to call certain additional defense witnesses constitutes ineffective assistance of counsel. We cannot determine, based on the current record, whether Defendant is correct. Accordingly, we hold that Defendant has not presented a prima facie claim of ineffective assistance of counsel and reiterate that such a claim is

more effectively pursued through a habeas corpus proceeding. *See Crocco*, 2014-NMSC-016, ¶ 14.

**CONCLUSION**

**{31}** For the aforementioned reasons, we affirm Defendant's convictions for kidnapping, false imprisonment, residential burglary, aggravated assault, and unlawful taking of a motor vehicle. We reverse Defendant's conviction for intentional child abuse by endangerment and remand for further proceedings consistent with this opinion.

**{32}  IT IS SO ORDERED.**

**J. MILES HANISEE, Chief Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**ZACHARY A. IVES, Judge**